UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:14-CV-176 (WOB)

GREG LEE, ET AL.                                              PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

S&E FLAG CARS, LLC, ET AL.                                    DEFENDANTS

Plaintiffs Greg Lee, Chris Ward, and Randy Essary (collectively "Plaintiffs") brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), and Kentucky Revised Statutes Chapter 337 against defendants S & E Flag Cars ("S & E"), Flag Cars R Us ("FCRU"), I & B Flag Cars, Inc. ("I & B"), and Ellen Ishmael (collectively "Defendants"), seeking recovery of unpaid overtime compensation and the costs of this litigation. Plaintiffs have moved for partial summary judgment as to the issue of whether Defendant I & B was their "employer" at the relevant times under the above statutes. (Doc. 161). Having reviewed the parties' pleadings, the Court now issues the following Memorandum Opinion and Order.

I. BACKGROUND

After its stipulated dismissal without prejudice, (Doc. 60), Defendant I & B, one of the three corporate defendants, was again

1

rejoined to the case in December 2020 because of I & B's business connections to the other three defendants.  Plaintiffs claim I & B was their "employer" for purposes of FLSA liability, in that I & B and the other defendants constitute a single employer for purposes of this suit.

The four defendants, S & E, FCRU, I & B, and Ellen Ishmael are or were in the business of providing escort services to semi-trucks hauling large, heavy equipment, typically equipment used in fracking operations. (Doc. 151, Answer to Second Am. Compl. at ¶ 3).  The three plaintiffs worked for S & E and FCRU as flag-car drivers starting at various times in 2011 until October 2014. (*Id.* at ¶¶ 30-31).  Plaintiffs claim they worked for Defendants in excess of 40 hours per week but have not received the one and one-half (1.5) rate over their regular wage as required under the FLSA. (*See* Doc. 147, Second Am. Compl. at ¶¶ 53-59).

To avoid duplicative statements of the same facts, the relevant details of the parties' relationship are described and cited at greater length in the analysis below.  Suffice it to say at this point the defendant-businesses, I & B, S & E, and FCRU, share strong operational similarities and connections.  Perhaps the most significant connection is the common, simultaneous management of the companies by the fourth defendant, Ellen Ishmael, who ran the day-to-day operations of all three business-defendants, providing service in the same line of business.

2

(Doc. 151 at ¶ 4, admitted). There exist some distinctions between the business entities, namely that I & B is an Ohio corporation owned not by Ellen Ishmael herself but by her daughter, (*Id.* at ¶¶ 8, 11, admitted), while S & E and FCRU are Kentucky LLCs whose sole member is Ellen. (*Id.* at ¶¶ 5-6, admitted). Still, the companies have very similar business models, similar or common clients, common operational headquarters out of the same office in Brooksville, Kentucky, and operate under the common direction of Ellen Ishmael.

In their response to the motion, Defendants maintain that the plaintiffs were not "employees" at all under the FLSA, that they were instead independent contractors not entitled to bring this suit. Additionally, and more pertinent to the immediate issue, Defendants argue that I & B is not coextensive as a single "employer" with the other defendants. To be sure, this opinion does not resolve the former issue of whether there exists an employment relationship between any of the adverse parties.[1] The Court is now only deciding the latter issue, whether I & B has a common identity with the other defendants as a putative employer for purposes of shared liability under the FLSA.

---

[1] The Court declines for now to find facts in dispute which bear on the employee-or-contractor issue, having left those issues for resolution by a jury should this case proceed to trial. The Court is aware that the issue remains outstanding.

I. ANALYSIS

As just alluded to, a more doctrinally accurate way to describe the immediate issue as whether Defendant I & B Flag Cars, Inc., constituted a "joint employer" or "integrated enterprise" with the other defendants per *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997), thus imputing to I & B employer liability for Plaintiffs' unpaid overtime compensation. Plaintiffs moved for partial summary judgment to resolve the employer identity issue as to I & B.

**A. Standard of Law**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment or resolution of an issue as a matter of law. FED. R. CIV. P. 56. "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Swallows*, 128 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 992.

Here, only if the undisputed facts or the evidence viewed in the light most favorable to Defendants fail to establish a shared

4

employer identity may the Court find for the Movant-Plaintiffs. *Cf. Lanman v. Hinson*, 529 F.3d 673, 679 (6th Cir. 2008) (*quoting Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). In this case, many material facts bearing on the issues were conclusively settled by clear judicial admission in the Defendants' Answer to the Second Amended Complaint and by I & B's Response to Interrogatories. (*See generally* Doc. 151; 161-2). *See also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) (recognizing the conclusive effect of judicial admissions in pleadings as to purely factual matters); 32 C.J.S. Evidence § 532 (2021) (judicial admissions are proper evidence of pure matters of fact as long as they are deliberate, clear, and unequivocal).

For Plaintiffs to recover unpaid overtime compensation from I & B under the FLSA and KRS Chapter 337 they must demonstrate they were "employees" of I & B at the relevant time. *See Swallows*, at 993. But because Plaintiffs never worked for I & B directly, they raise two doctrines to assign employer liability to it. Those theories are the "joint employer" and "integrated enterprise" (a.k.a., "single employer") doctrines of employer identity, theories of recovery discussed in *Swallows*. Under either doctrine, a defendant may be liable for overtime compensation if the plaintiff can prove a certain indirect employment relationship, notwithstanding the employee worked for another entity at the time in question, an entity legally or operationally distinct from the

5

putative employer. *See Swallows*, 128 F.3d at 996 n.4 (citing *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122-23 (3d Cir. 1982)). While both doctrines involve analyses with similar elements, they are analytically distinct. *Id.*

As an introductory overview, the "joint employer" theory applies where the terms and conditions of a plaintiff-employee's work are controlled simultaneously, "jointly," by two different employers in sufficiently significant ways. "Thus, the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment," warranting similar treatment in liability to a shared employee. *Id.* (quoting *Browning-Ferris*, 691 F.2d at 1123). The "integrated enterprise" theory, although having the same purpose and effect in liability, works in situations where "two nominally or legally independent entities are so interrelated that they actually constitute a single integrated enterprise." *Id.* The requirements of both doctrines are elaborated and analyzed in turn below.

**A. I & B was not a "joint employer" of Plaintiffs'.**

Under Department of Labor regulations, "joint employment" exists under two circumstances: (1) where one employer more directly employs the plaintiff while another benefits from the

employee's work at the same time, or (2) where one employer enjoys the services of an employee for one set of hours per week, while another employer employs the same worker for other set hours per week. 29 C.F.R. § 791.2(a)(1) and (e)(1). As the name and nature of the doctrine inherently suggest, there must be joint control over the employee at the same time or simultaneous benefit to two employers.

Applying the "joint employer" doctrine is quite simple here, though ordinarily it might involve a four-factor test should either of the two circumstances just mentioned apply to the case. Here, we may forego the four-factor test because the assertion fails on separate grounds. This doctrine inherently requires a plaintiff-employee's work be controlled by both putative employers simultaneously, or at least that both employers simultaneously benefit from the employees' labor, hence the term "*joint* employer." Thus, where only one of the two employers ever controlled the terms, hours, or direction of the employee's labor, the "joint employer" theory will tend to be inapplicable.

At no point during Plaintiffs' work relationship with S & E from 2011 to 2014 did I & B ever hire or direct Plaintiffs' work in any capacity, not even by Ellen Ishmael on I & B's behalf. Nor is there a suggestion that I & B directly benefited from Plaintiff's work. These facts would appear undisputed. Although S & E and I & B evidently shared the same terms and policies

7

concerning the flag drivers' work and Ellen Ishmael at least managed them both, Plaintiffs' labor was never devoted to any I & B work or assignment, nor did their labor seem even indirectly to benefit I & B. Thus, Plaintiffs are not entitled to a finding that I & B was a "joint employer" with S & E or FCRU.

**B. Defendants constitute an "integrated enterprise."**

Because they have failed to prove I & B employed them as a "joint employer" with any of the other defendants, Plaintiffs' motion may be granted only if they prove I & B employed them indirectly, as if through another defendant, as an "integrated enterprise" with said defendant, namely S & E and Ellen Ishmael.

Because the facts support the application of this doctrine, the Court will use the four *Swallows* factors in its analysis. "In determining whether to treat two entities as a single[, "integrated"] employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Swallows*, 128 F.3d at 993-94 (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982)). The third factor, control over labor relations, is a central concern. *Id*. at 994. After considering and weighing these factors, the Court finds Defendants were an

8

integrated enterprise with S & E and Ellen Ishmael, that I & B was as much an "employer" of the plaintiffs as any of the others, if they are to be found employers at all.

The interrelation of operations is the first factor. Interrelation of operations may be indicated, for instance, by common offices, common record keeping, and shared bank accounts and assets. *Id*. Here, I & B's and S & E's business operations were not only virtually identical, the two were certainly interrelated counterparts to one another. This first factor favors the plaintiff-movants. To begin with, the defendants all engaged in the same business of providing vehicle escort services in the same manner, often to the same clients, typically oil and gas companies engaged in fracking. (Doc. 147 at ¶ 9; Doc. 151 at ¶ 9, admitted). Indeed, I & B was formed in May 2014 to provide additional vehicles and escort drivers to the same companies and trucking assignments handled by S & E and FCRU. (Doc. 147 at ¶ 10; Doc. 151 at ¶ 10, admitted). S & E's and I & B's management evidently coordinated the companies' employees with the counterpart company in mind so fundamentally that these flag-car drivers, central to each business, were governed by the same "Terms and Conditions" of employment. (*See* Doc. 161-2, Ex. 1 at ¶ 14). Understanding those "Terms and Conditions" were common to S & E and I & B, and so given to the employees of both companies when

9

hired, the document states outright: "I & B Flag Car drivers[,] your work and instructions come from Brooksville, Ky. *S & E Flag Cars is where your work comes from.* Listen to Ellen's instructions and tell Ellen your problems. Megan [Braden] and Ray [Braden] do not solve everyday issues." (*Id*.) (emphasis added). As this document plainly states, I & B drivers were instructed to receive their work assignments *from S & E*, or more directly from the same manager Ellen Ishmael, from the same office location from which S & E operated, the office in Brooksville, Kentucky. (*Id*.).

In other ways, the management and administration of I & B, S & E, and FCRU were interrelated or coordinated with respect to one another. As discussed in greater detail below, Ellen Ishmael was and continues to be the manager of all three companies to the extent any of them remain operational. (*See* Doc. 147 at ¶¶ 5-6, 13; Doc. 151 at ¶¶ 5-6, 13, admitted). The aforementioned "Terms and Conditions" also required the drivers of S & E and I & B to send receipts for cost reimbursement and payroll to the same individual, Morgan Ishmael, who handled both companies' payroll out of the same Brooksville office, and who ensured employees were paid weekly on consecutive days, Wednesday for S & E and Thursday for I & B. (Doc. 161-2, Ex. 1 at ¶ 1-2). Although Defendants claim their assets and bank accounts were kept separate, and that may be true, all three companies' bookkeeping was concededly performed by

10

Morgan Ishmael, Ellen's daughter. (Doc. 147 at ¶ 17; Doc. 151 at ¶ 17, admitted). Drivers for S & E and I & B were to report vehicle issues and repairs, central to both businesses, to the same manager, Ellen Ishmael. (*See* Doc. 161-2, Ex. 1 at ¶ 9).

The only circumstances favorable to the defendants under the interrelation prong is that these plaintiffs received no work directly from I & B, that they worked officially for S & E, and that assets and equipment were owned and used separately by each company. But this first factor, like the test overall, looks more to the functional relation that the putative employer-defendants have to one other rather than the plaintiffs' relationship with each individual defendant. Quite strongly, the plaintiffs have satisfied this first prong pertaining to business interrelation.

Common management is the second factor. This factor firmly favors the plaintiffs, as well. While the companies shared no common directors or boards, they were entirely managed by Ellen Ishmael as the functional head of all three. (Doc. 147 at ¶¶ 4, 13; Doc. 151 at ¶¶ 4, 13, admitted). The legal owners of I & B did not control the daily operations, it was Ellen Ishmael who ran I & B and the other two businesses. (Doc. 147 at ¶ 4; Doc. 151 at ¶ 4; Doc. 161-2, Interrog. of I & B, at ¶¶ 1-2). I & B responded outright to Plaintiffs' interrogatories that "I & B delegates all such dealings [of actually providing escort services to

11

customers/trucking companies] to Ellen Ishmael." (Doc. 161-2, Interrogatories, at ¶ 2). And again, drivers for both I & B and S & E were to "report all vehicle troubles to Ellen immediately." (Doc. 161-2, Ex. 1 at ¶ 9). The Plaintiffs have clearly proven common management between the defendants.

Centralized control over labor relations is the third factor. Again, this factor carries the greatest weight under the test, *Swallows*, at 994, and it, too, favors Plaintiffs. The main inquiry is whether I & B controlled the hiring and firing of S & E employees, while also considering the terms, conditions, and policies under which employees worked, and perhaps how the nature and number of assignments were determined for employees. *See id.* at 995.

In this case the companies clearly have a common centralized authority in such matters: Ellen Ishmael. (Doc. 147 at ¶ 4; Doc. 151 at ¶ 4, admitted). By judicial admission Defendants unreservedly conceded as to all defendants that "Ellen Ishmael . . . has been in charge of . . . hiring, firing, managing, and supervising the business[-defendants'] escort drivers including the plaintiffs." (Doc. 147 at ¶ 4). And of course, as mentioned, the very Terms and Conditions of employment were the same for drivers of S & E and I & B, evincing centralization of authority over such matters, indistinguishable between drivers of S & E and

12

those employed more directly by I & B. (*See* Doc. 161-2, Ex. 1 at ¶¶ 1, 14). The only reasonable inference to draw from this is a shared centralized point of control for labor relations: Ellen Ishmael.

Common ownership and financial control constitute the fourth and final factor. This factor favors the defendants in this case because I & B had different legal ownership than S & E and FCRU. Yet, this circumstance is not strong enough to overcome the weight of the other three factors. Ellen Ishmael was clearly the sole member, registered agent, and manager of S & E and FCRU. (Doc. 147 at ¶¶ 5-6; Doc. 151 at ¶¶ 5-6, admitted). But Ellen held no legal ownership interest in I & B, notwithstanding her sole management authority in the company. The true owners, Madison Ishmael (again, Ellen's daughter) and Megan Braden, were not as involved in I & B's operations at all, and, in fact, could not even identify the customers or trucking companies I & B contracted with. (*See* Doc. 161-2, Ex. 1, ¶ 1-4). Still, they were the true owners and presumably would legally have the most financial control over I & B.

Considering and weighing the four factors in this case, I & B must be treated as an integrated enterprise with the other defendants, at least with S & E and Ellen Ishmael. The evidence very strongly supports the finding that I & B was a mere alter-ego of Ellen Ishmael and the other business defendants, its

13

distinction based primarily on legal formalities and formal business structure, while business operations and employment conditions were not just identical but entirely shared between the defendants. The supporting facts having been proven almost entirely by judicial admissions and responses to interrogatories, summary judgment in Plaintiffs' favor is appropriate. I & B may be treated as an "employer" of the plaintiffs under the FLSA and the Kentucky labor law, contingent on a later finding that Plaintiffs were in an employment relationship with S & E, FCRU, or Ellen Ishmael.

### III. CONCLUSION

Having reviewed this matter, and the Court being advised, Plaintiffs have shown there to be no reasonable dispute of material fact that I & B is an integrated enterprise with S & E and Ellen Ishmael. Accordingly, it is **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (Doc. 161), be, and is hereby, **GRANTED**. A separate order setting this case for trial and scheduling a pretrial conference will be filed concurrently herewith.

This 5th day of January 2022.



Signed By:
*William O. Bertelsman* WOB
United States District Judge